**Slip Op. 04-5**

**United States Court of International Trade**

<table>
<tr>
<td>

EURODIF S.A., COMPAGNIE GÉNÉRALE DES MATIÈRES NUCLÉAIRES AND COGEMA, INC., ET. AL.,

              Plaintiffs,

      v.

UNITED STATES,

              Defendant.

</td>
<td>

Consol. Court Nos. 02-00219 and 02-00221

</td>
</tr>
</table>

[Plaintiffs' Motion for Redress of Violation of the Court's June 25, 2002 Preliminary Injunction granted in part.]

Decided: January 20, 2004

Weil, Gotshal & Manges, LLP (Jahna M. Hartwig, Jennifer J. Rhodes, Stuart M. Rosen) for Plaintiffs and Defendant-Intervenors Eurodif S.A., COGEMA, and COGEMA, Inc.[1]

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, Stephen C. Tosini, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, for Defendant United States.

**Opinion and Order**

**Pogue, Judge:** Before the Court is Plaintiffs' Rule 63[2] Motion seeking redress for Defendant's violation of the Court's June 25, 2002 Preliminary Injunction enjoining liquidations of entries of

---

[1]Plaintiffs are sometimes collectively referred to in these proceedings as "Eurodif."

[2]Effective January 1, 2004, Rule 63, Contempt, is now Rule 86.2.

low enriched uranium ("LEU").  Order at 1 (June 25, 2002).

     The facts involved are undisputed.  Defendant, in its

Opposition to Plaintiffs' Motion, states them as follows:

> On June 25, 2002, this Court issued orders granting [P]laintiffs' consent motions for preliminary injunction to enjoin liquidation of entries covered by [the] <u>Amended Final Determination: Low Enriched Uranium from France; and Notice of Antidumping Duty Order; Low Enriched Uranium From France</u>, 67 Fed. Reg[.] 6[,]880 ([Dep't Commerce] Feb. 13, 2002), and [the] <u>Amended Final Determination: Low Enriched Uranium from France; and Notice of Countervailing Duty Order; Low Enriched Uranium From France</u>, 67 Fed. Reg[.] 6[,]889 ([Dep't Commerce] Feb. 13, 2002).[3]
>
> We first learned of liquidations in violation of the Court's orders from counsel for [the United States Department of Homeland Security Customs and Border Protection] ["]Customs["] on Friday afternoon, October 31, 2003, and notified the parties the following Monday, after confirmation of the relevant dates, entry numbers, and ports involved. Specifically Customs identified two entries of LEU that were inadvertently liquidated by the Customs Port of Baltimore.  First, entry number 788-23836412 was entered on September 5, 2002, and liquidated on July 18, 2003. Second, entry number 788-23925710 was entered on October 1, 2002, and liquidated on August 22, 2003.
>
> We also filed a status report to inform the Court of developments with regard to these liquidations on November 3, 2003.  On November

---

[3]The actual determinations subject to this motion are accurately cited as <u>Low Enriched Uranium from France</u>, 67 Fed. Reg. 6,680 (Dep't Commerce Feb. 13, 2002) (notice of amended final determination of sales at less than fair value and antidumping duty order); <u>Low Enriched Uranium from France</u>, 67 Fed. Reg. 6,689 (Dep't Commerce Feb. 13, 2002) (notice of amended final determination and notice of countervailing duty order).

7, 2003, the Court ordered us to file an updated status report by December 8, 2003.

In our status report of December 8, we informed the Court that: (1) Customs had searched all entries of LEU filed under case numbers A-27818 or C-427819 since September 30, 2000; (2) no other subject entries have been liquidated; and (3) communications with the Port of Baltimore had confirmed that the two liquidated entries were, in fact, liquidated as a result of an inadvertent clerical error. We further detailed the circumstances of the inadvertent liquidations[4] and informed the Court that [P]laintiffs had filed a protest with Customs concerning the entry that was liquidated on August 22, 2003.

Def.'s Opp'n to Contempt Mot. at 2-3 ("Def.'s Response").

The Court now considers Plaintiffs' motion.

## Discussion

Defendant concedes that contempt may be established upon a

---

[4]Specifically, in its Second Status Report on this matter Defendant reported as follows:

[P]ort personnel confirmed that the liquidations were the result of a database query error. The body of the instructions received by the port on June 13, 2003 indicated that the relevant period was from July 13, 2001 through January 8, 2002 and any date on or after February 13, 2002. However, the instructions' header omitted the post February 13, 2002 period. When a Customs employee performed database queries to locate entries subject to the Court's injunctions, the query was run against the dates set forth in the header of the instructions and, consequently, did not discover the entries at issue. . . . Accordingly, the subject entries were liquidated . . . .

Def.'s Second Status Report at 2-3 (Dec. 8, 2003).

showing of:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

Def.'s Response at 8 (citing Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000) (citation omitted)).

Nor is there any doubt that, in the instant case, there was a clear and valid decree, in the movant's favor, the terms of which were violated by Defendant. Moreover, despite Defendant's argument to the contrary, it is clear that "a violation of the decree need not be willful for a party to be held in civil contempt." 11A Charles Alan Wright et al., Federal Practice and Procedure § 2960, at 382 (2d ed. 1995) (citations omitted). It is sufficient that Defendant had knowledge of the violation, as it did here.

What is substantively in dispute between the parties here is the weight to be given to the government's claim of "inadvertence" and the adequacy of Defendant's administrative procedures for ameliorating the harm to Plaintiffs.

Specifically, Defendant proposes to remedy its own violation of the Court's injunction, and remedy the erroneous liquidations, by inviting an order directing Customs to reliquidate both of the entries in question at the final and conclusive antidumping and

countervailing duty rates prevailing at the conclusion of this litigation.[5]  See Def.'s Response at 7-8.

Plaintiffs argue that Defendant's proposed remedy is inadequate, noting that "[t]he Government's promise of a delayed and uncertain reliquidation provides Plaintiffs little comfort, given Customs' failure to adhere to the Court's June 25[, 2002] injunctions," Pls.' Mot. for Redress at 2, 4, and requests that the Court "order Customs to issue such further instructions as may be necessary to assure . . . that Customs shall not liquidate [prior

_____

[5]Defendant proposes to accomplish this reliquidation using the following administrative procedures:

> First, Eurodif has already availed itself of an administrative remedy with respect to entry number 788-23925710, which was liquidated on August 22, 2003.  Eurodif filed a timely protest pursuant to 19 U.S.C. § 1514 on November 21, 2003. Furthermore, should the protest not be heard for any reason, Customs possesses the authority to reliquidate entry number 788-23925710 at the final and conclusive rate of duty for the same reasons explained below concerning the other inadvertently liquidated entry.
> Second, we propose the following administrative remedy with respect to entry number 788-23836412, which was liquidated on July 18, 2003.  Customs possesses the authority to cure errors that are "brought to [its] attention . . . within one year after the date of liquidation or exaction."  19 U.S.C. § 1520(c)(l).  Because this error was brought to Customs's attention "within one year" of liquidation, Customs may reliquidate entry number 788-23836412 at the final and conclusive rate of duty assessed upon this entry.

Def.'s Response at 7.

to final court decision] entries of LEU from France" that are covered by the antidumping and countervailing duty orders. Id. at 4-5.

The Court gives weight to Plaintiffs' claim. The record here establishes that Defendant has not complied with the Court's June 25, 2002 injunction. Redressing that violation requires supervision of Customs' compliance with the Court's order to provide a measure of certainty that compliance will occur. Accordingly, to insure that Defendant's violation is redressed, the Court will require Defendant to monitor its compliance and report to the Court on its effort to assure compliance with the Court's original injunction.[6]

**THEREFORE,** upon consideration of Plaintiff's Motion for Redress of Violation of the Court's June 25, 2002 Preliminary Injunctions, Defendant's response thereto and all other pertinent papers, it is hereby

**ORDERED** that Customs shall reliquidate entry number 788-23836412 upon determination of the final and conclusive rate of duty in accordance with the Court's injunction of June 25, 2002; and it is further

**ORDERED** that Customs shall reliquidate entry number 788-23925710 upon determination of the final and conclusive rate of duty in accordance with the Court's injunction Orders of June 25, 2002; and it is further

**ORDERED** that Customs shall not distribute any funds from the cash deposits made upon entry numbers 788-23836412 and 788-23925710 pursuant to 19 U.S.C. § 1675c(a) until after Customs has reliquidated those entries in accordance with this Order; or

---

[6]Because of the Court's disposition, it is not necessary to reach Plaintiffs' claim that the erroneous liquidations are void *ab initio*. Pls.' Mot. for Redress at 3.

reliquidated entry number 788-23836412 pursuant to this Order and determined a final and conclusive amount of duty to be assessed upon entry number 788-23925710 pursuant to 19 U.S.C. § 1514(c); and it is further

**ORDERED** that Customs shall monitor its compliance with the Court's injunction of June 25, 2002, providing such further instructions as it determines necessary to assure compliance; and it is further

**ORDERED** that Customs shall file with the Court a regular status report indicating its compliance with the Court's injunction of June 25, 2002, and this Order, said report to be filed every 180 days.


                                        /s/Donald C. Pogue
                                             Judge


Dated:      January 20, 2004
            New York, New York